the judges of the United States Court of Appeals for the Fourth Circuit. We will now hear argument in our third case 2014-18 Fernando M. Smith versus Michael Lee Travelpiece. Mr. Simmons, are you out there? Yes, Your Honor. Good to have you with us, Mr. Simmons. Thank you very much. You may proceed. All right, may it please the court, my name is Lonnie Smith. The appellants in this 1983 action, you have a case where the underlying state criminal action with the search beginning in 2014, it took a long time for the underlying criminal case to get resolved and by the time it was resolved in June of 2018, not only had the state court judge declared the search was invalid and made a lot of very specific findings about that, ultimately the criminal charges were dismissed with prejudice and the 1983 action that was filed in this case was filed on, let's see here, it was 2019, so it was filed on September 10, 2019, which was less than two years after the dismissal of prejudice. Now, Mr. Simmons, you say the criminal case started in 2014. What started, whether it was a search warrant, is that correct? That is correct, started with the search warrant, yes. And that's in October of 2014? Yes. And you all challenged that in some kind of a mandamus proceeding, that search warrant, that search business, and you challenged that in a mandamus proceeding in the circuit court of Mineral County in November of 2014, correct? Yes, yes, they filed a mandamus. It wasn't me below judge, but yes, whoever, the lawyers from McLeod did that. Yes, it was the folks you represent now. Yes, correct, yes. All right, and then subsequent to that, when it was unsuccessful, they filed a proceeding in the Supreme Court of Appeals, West Virginia, in March of 2016. Yes. That was a year and a half after the search. Yes, that's correct. And the Supreme Court of West Virginia affirmed the circuit court of Mineral County. Yes. The indictments, that is, the beginning of the criminal proceedings, began in May of 2015. That is correct. May of 2015. That's correct. And then it was more than a year after that, in June of 2016, that one of the defendants in the indictment, Mr. Crabtree, filed a motion to suppress, and then his co-defendant, Mr. Smith, filed a motion to suppress in October 2016. Yes. So it was two years, nearly, after the search warrants and affidavits and searches before the motions to suppress were even filed. Yes. Correct. Okay, so we're up to the dates that the district court judge found to be critical, which was the district court found that the critical date was June 16 of 2016 and October 21 of 2016, which is the date that the two motions to suppress were filed. And as a result of choosing that as the accrual date, the district court threw the case out, saying that the statute of limitations had expired. And what do you think we should use as the accrual date, and what is your best argument for that? Certainly. I think the accrual date is June 4th of 2018. That's when the criminal charges were dismissed with prejudice. That's when my clients' liberty interests were finally freed. They no longer had their liberty restricted, and we easily met the statute of limitations using that as the accrual date. What if your client had never been indicted, such that there was no resolution to any criminal action? There was only an illegal search, but no indictment. Right. It would be a completely different issue. Would they still have a 1983 claim? Not in my opinion. I think if their liberty interest isn't impacted, they would not get the benefit of the McDonough and Heck line of cases. They would simply be complaining about a bad search, and therefore the statute, the accrual date there would be early. Okay, so your distinction then in response to what FLE argues, which is that somebody who is the subject of a bad search that never comes to fruition would never have the benefit of being able to sue, your response is that's different because the liberty interest isn't implicated. They could still sue, just not under a 1983 theory. Is that your position? No, no. If it's a bad search, they could file the lawsuit earlier for the bad search of 1983 action. Let's say that... Then why couldn't your client file, have filed the lawsuit earlier for a bad search? I mean, following the district court's line of reasoning, you knew it was a bad search or surmised it was a bad search at the time the motion to suppress was filed, so why couldn't your client be held to that same standard? Theoretically, you actually can file a 1983 action while your criminal charges are pending and before the search had been declared bad. I mean, I don't know why people would do that in the real world. I've seen... I guess to meet the statute of limitations, to meet the two-year statute of limitations is why somebody might do it. So, could you respond to how that isn't a violation of the statute of limitations? You have two separate, you have two separate interests. The one, if it's simply the search, you're complaining that somehow the search is invalid, but what we were complaining about here was the bad search led to our clients being charged criminally. They had to postpone their liberty, was their liberty interests were restricted as a result and Madonna recognizes that even if you're on a PR bond, your liberty is restricted and that's why using the to sue over their liberty interest being restricted, they had the right and duty to wait until the criminal charges were dismissed, which is what they did. They waited until after the criminal charges were dismissed with prejudice and that's what's different between... So, you're saying they could have sued earlier under a different theory? Under a different theory, yes. And then amend the... then why not sue earlier and amend the complaint? Well, you could. I mean, I guess you could. I guess it depends on what would happen. You could have a search that's bad and let's say that for whatever reason, the prosecutor waited two years and then said, okay, now we're going to indict you based upon the evidence that we found from this bad search. But once you indict them, you're affecting their liberty interest and if you're going to sue over the restriction of liberty, you then have an obligation to wait until your liberty interests are freed and the underlying criminal cases is resolved in your favor before you can file, which is exactly what happened in McDonough and in Heck. And that's why that line of cases, I think, applies here. The analysis that the courts... Can I ask? Maybe I'm not following your argument so well. Heck and McDonough are cases that are about liberty interests, right? So they're all... they're only about liberty interests, right? And so in those cases you see in McDonough, the court talked about, you know, sort of a pre-process and post-process liberty interest deprival. But it's all about liberty interest. What seems different here and what I'm having a hard time reconciling, I think what you're identifying is the right line, is that it's a search, that that's a fundamentally different claim. You know, the Supreme Court said that, you know, a wrongful search under the Fourth Amendment, you know, is is complete at the time of the search. And so let's say take for a second that you could you could divide it between the search and a liberty interest. It seems like you must file the suit with respect to the search when it accrues. And I think you acknowledge it accrues before the indictment happens. Yeah, I agree. If that's the only thing that you're complaining about. But the search ultimately, though, led to the indictment and that's why... How do we know that, Mr. Simmons, by this record? I mean, it appears that way, but is it connected up from the... on the record that the what was seized resulted in the indictment? And then how do you get around the fact that the indictment had to be precipitated by the state prosecutor, not by the police officers. The prosecutor had to present it and sign it and the jury foreman had to get the jury had to vote properly and the jury foreman had to sign it. Right. They're not fused to being that they've done anything wrong. True, Judge. I think the way you make the connection, you look at the sequence of events and ultimately you look at the fact that the criminal charges were dismissed with prejudice after the judge made those very specific findings about how bad the search warrant was and threw out all the evidence. If there had been evidence independent of the search that could have been used to prosecute my clients, they could have gone forward with that, but they didn't. So they not only wiped out the evidence that was obtained, but they also dismissed the indictments with prejudice. The way the US Supreme Court and this court has analyzed these 1983 cases is that you look at the allegations and in order to determine which statute of action this is similar to, and McDonough... Wait, but before you get there, right, so it seems like it's a two-step inquiry and I'm curious about this. I think it's difficult, but first you must identify the constitutional wrong and then you must identify what the common law tort analogy is. And the constitutional wrong could, I guess, could be one of two things. One is an illegal search, right, and then the other is some illegal trial process. So in other words, you falsified evidence or you held back evidence or you lied, cheated, or steal during trial and that's, you know, that's a due process claim under McDonough, but the Fourth Amendment claim seems different, right? And so it seems that we got to separate those two to the extent your complaint is about the Fourth Amendment claim. I'm having a hard time seeing why, as you can see, you could sue before you're indicted. And so how does that not suggest that the claim has in fact accrued, whatever the common law tort analogy might be? The complaint specifically alleged the Fourth and the Fourteenth Amendments, so we, I did include in the complaint a due process, which is essentially the theory that was used in McDonough. One of the interesting thing about McDonough... All right, so, but that would suggest, okay, so at least arguably, and we can talk about whether it works, but arguably to the extent you have a claim with respect to a due process trial violation, then that may go forward. But to the extent your claim is a Fourth Amendment search violation, what I hear you saying is that that accrued before the indictment, and so once it's accrued before the indictment, the separate injury than the trial injury. I think it's a separate theory. If we had, if anyone, if the plaintiffs here had wanted to assert that, we haven't, because the bad search led to the criminal charges, led to the restriction of their liberty interest, and we had to wait until the criminal case was wiped out with prejudice and resulted in their favor before they could file. That's exactly, and one of the cases that really kind of follows that I cited in the it's the Pippin case, where there, part of what happened in Pippin was there was a false search warrant presented to judges and executed, and as a result of that, they were charged criminally, and that particular court held that squarely fits the fabricated evidence analysis under McDonough, and when courts are both claims, right, so to the extent you made below a fabricated evidence claim, that seems to make sense to me under McDonough, but it seemed like your primary claim is not a fabricated evidence claim, but instead that there was real evidence that was unlawfully obtained, right? That's the illegal search warrant, so it's not, it's not that they like made up the documents, it's that they weren't entitled to get them, right? And that, so those are, but those are two separate claims, right? Unlawfully obtained evidence is distinct from a fabricated evidence. Isn't that, isn't that fair? Well, I mean, that is a distinction in the Pippin case, that court, that district court reviewed those two as one and the same. But why, so I understand that you found a district court that did that, but why would you review real evidence that was unlawfully obtained, right? So that violates the Fourth Amendment. It might be subject to the exclusionary rule, right? But, but that's a, that's the unlawfully obtained real evidence, which is a Fourth Amendment violation, as opposed to fabricated evidence, which McDonough suggests is a due process violation, right? Not a due process violation, suggested, it doesn't actually hold it, I guess, but McDonough suggests that's a due process, because it's about the trial process. But those are very different claims, that it strikes me when we look at their common law court analogy, look very different. Why am I, why should I put those together? I'm out of time now, but I'll be happy to answer that question. Mr. Simmons, you answer the questions as long as Judge Richardson or one of the others. Okay, thank you, Judge. Okay, in looking and making the analysis about, okay, what's the common law analogy here? I felt that in the briefs, I cited multiple cases where malicious prosecution actions were based upon false search warrants. That was the actual basis for a malicious prosecution. So if you're looking for an analogy under the common law, that's a, that's a specific example of how you should analyze it. I do agree, this whole area... But wouldn't that suggest, and I'll let you stop, but wouldn't that suggest that you don't have a claim if you're never prosecuted? I mean, that can't be the tort analogy. That can't possibly be the right tort analogy. Well, I don't know how else to answer that other than a bad search warrant, a false search warrant is, in fact, malicious prosecution. I cited a bunch of cases for that. So when a court's going to define, okay, what is the analogy? It would require, I mean, malicious prosecution requires a prosecution. And we all acknowledge, I think, that if you have a bad search warrant and you are never prosecuted, that you have a Fourth Amendment 1983 claim. Your Honor, I suppose it depends on what you mean by being prosecuted. My clients were prosecuted. They spent years with their liberty... I understand your clients were prosecuted, but what I'm talking about is that you have a Fourth Amendment claim, hypothetically, not your clients. If you have a bad search warrant and then you are never prosecuted, you can still bring a Fourth Amendment claim, right? If you wanted to file a claim before the criminal case was resolved, I guess... No, I'm saying there is no criminal case. No criminal case is ever filed. I mean, there are bad search warrants that don't result in indictments, right? True, that's true. And if that's true, you could bring a Fourth Amendment 1983 claim in the absence of any prosecution. True, that's true. I don't disagree with that. I'm with you. I know I'm out of time, so I'll mute. Thank you, Mr. Simmons. Mr. Mullins, are you out there? I am, I believe so. So, may it please the court, my name is Michael Mullins and I represent Trooper Travel Peace in this case, and we urge the court to affirm the decision of the lower court and dismiss this case. And the court hit the nail on the head when it was asking Mr. Simmons questions about when this case accrued. And if you look at this court's prior decision... What's your position on that? When did it accrue? It accrued at the time of the search and the seizure, and one needs to look no further than the complaint to see that. If you will look at paragraph 9 of the complaint, which is a joint appendix, page 11, the plaintiff specifically pled, the crux of this case is the economic and other damages suffered by plaintiff when, when being the accrual, the state of West Virginia through the affidavit submitted by the defendant, obtained an invalid and overly broad search warrant. So they're telling you when it happened, and we know that was in 2014 when the search warrant was obtained, and they're telling me what happened. Let me ask a follow-up to that question. The wrong is, the constitutional wrong here was an illegal search, and at least traditionally in our country, illegal searches were challenged by trespass actions, right? Which is an unauthorized entry into property. So why don't we think about the common law tort analogy in a search case as being trespass? Maybe it's trespass to chattels, if you're taking things, we could debate the nuance, but why isn't it trespass? Is that, is that the right common law tort analogy? Or do you think it's malicious prosecution as well? I do not think it's malicious prosecution. There's nothing about the complaint that pleads any type of malicious prosecution claim, and I think that's what's important, and that's exactly what Judge Grove found. What, is it trespass? If it is a trespass, and I can see that being a trespass, it would fall within the two-year statute of limitations. Two years under West Virginia law, within the time of the trespass, the claim, the statute of limitations would bar the claim. Right, and the idea there being that the trespass, that the claim accrues at the time of the entry, but there may well be a discovery rule that tolls that accrual if they didn't know it was the claim may accrue at the time of the trespass, but the discovery rule might mean that it's told until the knowledge is had. Is that fair? Even if the court takes that analysis, the plaintiffs knew of this, at least at the time when they filed their motion to suppress. I agree, I'm just trying to understand the framework. I'm not disagreeing with the conclusion of the framework, I'm just trying to understand. If a bad search, the claim accrues at the time of the motion to suppress, and it's two years, and many criminal prosecutions last far longer than two years, that may necessarily mean that everybody will need to file a motion to suppress and a 1983 action at the same time in order to make sure they don't miss this two-year statute while they're defending themselves against the criminal action. Is that what we want? Well, I think that's what the law demands, but I think that their accrual date is actually the search. He's a lawyer, that's not a bad thing to him. The search date is their accrual date, not when they filed the motion to suppress, but the motion to suppress demonstrates their knowledge. It doesn't start the time frame, it demonstrates that they at least knew it by that date, and that's what the court... So in order not to miss a two-year statute of limitations deadline, anytime someone has reason to file a motion to suppress or questions the validity of the search warrant, they need to file a motion to suppress and a 1983 action on the same day. Yes, if they believe that the search was unreasonable or unconstitutional, they need to file that within two years of obtaining that that's sort of what Wallace tells us, right? So Wallace says that may well happen and then, you know, courts have the authority to stay those actions or do what they need to during the pendency of any criminal action. I mean, that's sort of Wallace itself, right? Exactly, and if you look at page 183 of Wallace, it says we gather that if such claim properly may go forward despite the lack of disposition of the criminal charges that are unfavorable to the 1983 plaintiff, then the claims must have accrued, and that's exactly what we have here. The flip side of this, if you think about it, had they filed this claim timely, the defendant could not have said, whoa, whoa, whoa, this case needs to be dismissed because the conviction hasn't been overturned. And so that demonstrates conclusively that the claim had, in fact, accrued at the time of the search. And so I think that's what's important here. And if you go back to the claim... Can I ask you then a follow-up question? Absolutely. So I'm on board with the search claim, but at least on appeal, your colleague also has a fabricated evidence argument, right? And I think after McDonough, we got to look at that differently because, you know, the sort of steps that Manuel versus City of Gillette and others tell us is identify the constitutional right and identify the common law tort analogy, but the common law or the constitutional right there suggests a due process violation, right? If I'm manufacturing or fabricating evidence, as opposed to unlawfully obtaining real evidence, that sounds like a due process claim. And that would not accrue. That does sound like a malicious prosecution claim. So why shouldn't we find the Fourth Amendment allegations are time-barred, but the malicious prosecution allegations, that being the due process allegations, are not time-barred? It's because when you look at the four corners of the complaint, which is what must be looked at here, just like the lower court did, the allegation of the fraudulent evidence is specifically noted to be fraudulent statements in the affidavit in support of the search warrant. There's no allegations in the complaint of anything done after the application for the search warrant that was fraudulent or a misrepresentation. So is there any allegations in the complaint? I mean, I don't see it, but I'm just trying to make sure I understand fully. Does the complaint allege that during the search warrant they manufactured evidence as opposed to unlawfully seized evidence? It's just an allegation of an unlawful seizure based upon a predicate that they allege that the search warrant was improperly obtained. They don't allege that any evidence was fabricated and produced to the court. They allege that the evidence that was obtained. Do you agree? They don't allege anyone put anything phony in there or anything like that. It's all about, their entire plan is all about getting to the warrant. Do you agree if the scenario was different? So if we went back and there was a new complaint and it alleged an unlawful search warrant where they see unlawfully seized evidence and in addition, you know, the prosecutor manufactured or fabricated evidence. In that scenario, if it's properly pled, is the distinction that I'm talking about correct? The Fourth Amendment search claims would be time barred here, but the fabricated evidence claims like Madonna, like in McDonough, would survive? I agree and I think that's exactly what happened in McDonough. There was an allegation that the prosecutor introduced false evidence knowingly at the trial and that's not what we have here. All the allegations of any impropriety occurred in the application for the search warrant when you look into the complaint. And I think that's the distinction here that we've got to and all the decisions that follow HEC look at, you know, they look at the four corners of the complaint and they draw an analogy to the closest common law action. And here, three different times in the complaint, again, I already talked about paragraph 9, but in paragraph 35 and then again in paragraphs 33 and 34, they talk about the alleged impropriety was in the application for the search warrant, which is time barred here. There's no allegations. The word malicious prosecution don't exist in the complaint. There's no allegations in the complaint of any conduct by the officer that was illegal, immoral, or otherwise after the application for the warrant. The word warrant is in the complaint about 30 times. The word illegal search is in the complaint about 30 times. We're looking at the search and illegal warrant claim here that Mr. Simmons acknowledges they could have filed two years after the search warrant was applied for. And when you go back and look at Brooks, it says if they could have filed it, then it accrued at that time. And if it accrued at that time, they've missed their statute limitations and therefore this court was, the lower court, was right when it was. Is there an allegation of fabrication of evidence or false evidence presented to the grand jury? That's not in the complaint. There's no allegation of that. Well, that's what I'm talking about. In the complaint, is there anything alleged about deception of the grand jury or the reception of the prosecutor or anything like that? No, your honor. There's nothing in the complaint that references anything that happened. Does it even allege that your client, Mr. Travel, please testify in front of the grand jury? I believe that the complaint references that he testified in front of the grand jury, but it does not reference that he testified falsely in front of the grand jury. The only other point that I'd like to make, unless the court has additional questions for me, is that, you know, the Heck case is very specific in when it applies and when it doesn't apply. And what it says is that the Heck decision only applies when a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction. And that's exactly what Judge Grove talked about in her opinion on page 7 of her opinion, which is a joint appendix, page 168. She specifically said Heck only applies when a judgment in favor of plaintiff would imply the invalidity of his conviction or sentence. And then she went on to discuss how here Heck does not apply because had plaintiff filed this claim for an illegal search, an illegal seizure, it would not have implied the And again, I think that's what's important and it coincides with what we talked about with Brooks. The court went on to note that on page 7 of the opinion and page 168 of the joint appendix, that plaintiffs could have filed a civil action against defendants while their criminal proceedings were ongoing because the result of their 1983 claim would not have been validated their conviction or sentence. And again, the other thing that I think is important about Judge Grove's opinion is when you look at page 6 of that opinion, which is on joint appendix page 167, she talks about how the district court judge looked specifically at the allegations contained within the four corners of the complaint and found that based on the face of the complaint, plaintiffs 1983 claim only concerns defendants conduct during the search and seizure. And Mr. Simmons is acknowledged because he has to acknowledge that that search and seizure claim, which is this claim that's made in the pending civil action, could have been made within two years of the search and seizure. And under Brooks, because it could have been made, that means it accrued and because it accrued more than two years prior to filing the civil action, it has to be dismissed and this court should uphold the lower court's dismissal in this case. If the panel doesn't have any more questions, I would rest on our briefs and the arguments that we've made here today. Very well, Mr. Williams, we appreciate it. Mr. Simmons? Yes, Your Honor. Okay, thank you. I wanted to point out a they talk about this is when they're trying to distinguish Heck and Cato Wallace, the decisions, and the court says, by contrast, a claim like Madonna's centers on evidence used to secure an indictment, which is exactly what we have here, and it goes on or and at a criminal trial, so it does not require speculation about whether prosecution will be brought. It directly challenges and thus necessarily threatens to impugn the prosecution itself, quoting from Heck. That's why Madonna followed Heck. But Madonna's about fabricated evidence, right? It's not about true evidence that was unlawfully seized during a search. The distinction between the allegation and the complaint, and this is what some courts, courts put different labels on these causes of action. There are several courts that call this judicial deception, the complaint specifically talks about judicial deception, and that's when a false affidavit is presented to a judge, and the judge accepts these false representations, these incomplete representations. The officer knew stuff, but he didn't include it in the affidavit. It turns out the judge even said there was never any basis for probable cause here, and when you look at the allegations that were made, there wasn't even any crime here, and based upon that, that's why they make the analogy to malicious prosecution. That's the closest analogy. Can you respond to your colleague's suggestion that the complaint includes no suggestion of fabricated evidence after or related to the execution of the search warrant? After the search warrant, all of the lies to the court, misleading statements to the court, incomplete statements to the court, whatever label the judge put on it occurred with the affidavit. The affidavit triggers a search warrant, and then they took everything from this business and essentially shut the business down. So that's what we're dealing with here. So there's no allegation in the complaint dealing with impropriety that occurred after the search warrant, after obtaining the search warrant. That is correct. That is correct because once you have the bad search, the net evidence is used to indict my clients, and then their liberty interest is restricted. They then had to wait for the criminal process to be completed using the file to complain. They're 1983 action here. You're saying the indictments and the proceedings relating to the motion to suppress had the effect of tolling the statute of limitations for the bad act? That is correct. Under Peck and under McDonough, that's exactly right, Judge. That's the argument. Judge Grosz said it's all based on the search warrant affidavit, which you agree, and the search, and the two years expired in 2016, two years from the date of the search warrant. Yeah, Judge, under that analysis, if you actually went from the date of the search, the statute ran, I guess, before the motion to suppress was filed. So the district court judge at least... The motion to suppress was filed. Okay, right, right. One was October 23rd, 2014, for the search activities, and the second motion to suppress was filed October 21st, 2016. Right. But after the indictments. Right, right, right. Okay. Position counsel, let me ask this question, just because it seems like there's maybe a little line. I sort of read the case law suggesting that the claim accrued at the time of the search, but the discovery rule meant that it didn't, it was told, effectively told, until you knew enough to know that the search was wrong. And we don't need to determine what date that is, and I guess at some level it doesn't matter which of those dates govern here because they're both too late. But do you have a position on which way we think about that? I mean, we normally think about the accrual happening when the injury and the wrong occurs, but the discovery rule means that if you don't know about it, you don't have the obligation to bring the claim until you learn of the facts, or maybe should have known of the facts, that would give rise to the claim. And Judge, I see I'm in the red now, but may I answer that question? Please. You can answer the question, Mr. Simmons, but that's fine. Don't hesitate. Okay, thank you, Judge. I don't review the district court's opinion as saying that there was some discovery rule that made the statute run for the date of the search, the date they filed the motion to suppress. Anyone who practices criminal law and is in the search are going to file a motion to suppress. I don't know the criminal defense lawyers are so omniscient that they actually know all the facts at that time. That's why they ultimately had a hearing where the state trooper was under oath, and then once the circuit court judge heard all that evidence, he issues his order in February of 2018 saying all the findings that he made about how misleading and inaccurate the search warrant was, and then that's what caused the whole thing to be dismissed. So yeah, I don't believe... Isn't that where the discovery rule comes into play? Yeah, at that point, I think that's right, and that's why I think it's similar to... That's why the courts are saying it's similar to malicious prosecution, because they like to use the date that the criminal charges were resolved in favor of the client. So unless you have any other questions, I'd respectfully ask the court to reverse the district court so we could go ahead and develop the rest of the facts. Thank you, Mr. Simmons. We appreciate it very much. And thank you, Mr. Mullins. It's good to have both of you with us. We It's great to have both of you lawyers, especially Blacker and I. I do, too. So we'll take this case under advisement.
judges: Robert B. King, Stephanie D. Thacker, Julius N. Richardson